IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CORPORATIVO GRUPO R SA de C.V., | § § | Civil Action No. _____ |
| Plaintiff, | § § § | |
| v. | § | |
| MARFIELD LIMITED INCORPORATED And SHANARA MARITIME INTERNATIONAL, S.A. | § § § § § | |
| Defendants. | § § | |

**VERIFIED PETITION AND COMPLAINT TO CONFIRM ARBITRATION AWARDS AND FOR ISSUANCE OF A WRIT OF ATTACHMENT UNDER TEXAS LAW TO SECURE PROPERTY PENDING CONFIRMATION**

Plaintiff Corporativo Grupo R SA de C.V. ("Grupo R"), by and through its attorneys Blank Rome LLP, complaining of the above-named Defendants, Marfield Limited Incorporated ("Marfield") and Shanara Maritime International S.A. ("Shanara," and with Marfield collectively referred to as "Defendants"), files this Original Complaint to Confirm Arbitration Awards and for Other Relief in the form of a Texas Writ of Attachment pursuant to FED. R. CIV. P. 64(a) and TEX. CIV. PRAC. & REM. CODE § 61.001 and alleges as follows:

A. **JURISDICTION**

1. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203, the *Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958* (the "New York Convention"), as Grupo R seeks to confirm London arbitration awards against the Defendants and to otherwise obtain security over the Defendants' property currently within the Southern District of Texas.

1

2. Venue is proper in the Federal District Court for the Southern District of Texas as the property at issue, the Vessels M/V CABALLO MAYA and M/V CABALLO MARANGO (collectively, the "Vessels"), are currently berthed in the Port of Galveston, Texas.

A. **PARTIES**

3. Grupo R is a conglomerate of Mexican companies dedicated to the oil, gas and energy sector in Mexico. The company operates in the states of Campeche, Tabasco, Tamaulipas, and Veracruz with its headquarters and principal place of business located at Melpchor Ocampo 193, Col. Veronica Anzures, C.P. 11300, Del. Miguel Hidalgo, México City, Mexico.

4. Marfield Limited Incorporated ("Marfield") is a foreign business entity having its principal place of business at Edifico Hong Kong Bank 6 Piso, Samuel Lewis Avenue, Panama. Marfield is the owner of the M/V CABALLO MAYA ("MAYA").[1] Marfield is a non-resident as that term is used in subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code, has not registered to do business with the Texas Secretary of State, does not maintain a business office or address in Texas, and has not designated or maintained a resident agent for service of process in Texas. Process or notice can be sent to Marfield Limited Incorporated c/o Coastline Maritime Ltd Pte, 03-04 King's Centre, 390 Havelock Road, Singapore 169662.

5. Shanara Maritime International S.A. ("Shanara") is a foreign business entity having its principal place of business at Edifico Capital Plaza, 8 Piso Costa del Este, Ave. Roberto Motta, Panama City, Panama. Shanara is the owner of the M/V CABALLO MARANGO ("MARANGO").[2] Shanara is a non-resident as that term is used in subchapter C of Chapter 17 of

---

[1] See Exhibit A, Declaration of Grupo R counsel Rafael Soberanes Rangel (the 'Rangel Declaration"), Rangel Exhibit 1, Certificate of ownership and encumbrance for the MAYA.
[2] See Exhibit A, Rangel Declaration, Rangel Exhibit 2, certificate of ownership and encumbrance for the MARANGO.

the Texas Civil Practice & Remedies Code, has not registered to do business with the Texas Secretary of State, does not maintain a business office or address in Texas, and has not designated or maintained a resident agent for service of process in Texas. Process or notice can be sent to Shanara Maritime International S.A. c/o Coastline Maritime Pte Ltd, 03-04 King's Centre, 390 Havelock Road, Singapore 169662.

B. **RELEVANT FACTS**

I. **General Background**

6. Grupo R is a conglomerate of Mexican companies dedicated to the oil, gas and energy sector in México.[3]

7. Upon information and belief, in early 2014 the MAYA and MARANGO were originally demise-chartered to an entity called "Oceanografia."

8. For various reasons unrelated to the above-captioned matter, on February 28, 2014, the Prosecutor´s Office Against Organized Crime of the Mexican Attorney General initiated a criminal investigation against Oceanografia, and in connection with that investigation, it sought to seize the MAYA and MARANGO in Campeche, Mexico. The Mexican authorities approved of the seizures, and the Vessels were seized in these jurisdictions on or around March 20-27, 2014 (the "First Seizure").

9. Mexican bankruptcy proceedings were thereafter commenced against Oceanografia by the Mexican Attorney General, and the Vessels were separately seized by Mexican governmental authorities in connection with that bankruptcy on or about April 10, 2014 (the "Second Seizure").

10. In early 2014, Grupo R entered into general discussions with Marfield and Shanara

---

[3] See Exhibit A, Declaration of Grupo R Legal Manager Rafael Soberanes Rangel.

to purchase the Vessels. It was the intent of the parties that the Defendants would make arrangements to release the Vessels from both the First Seizure and Second Seizure, to complete the sale of each Vessel to Grupo R.

11. On March 21, 2014, Grupo R entered into a Memorandum of Agreement (the "MAYA MOA") with Marfield for the sale of the MAYA, at a purchase price of $150,000,000.[4] The MAYA MOA required Grupo R to provide Marfield with a $5,000,000 deposit within six days of signing the MOA. The MAYA MOA otherwise stated (at Clause 14) that if Marfield was unable to perform the agreement and ultimately deliver the MAYA to Grupo R, then Grupo R was immediately entitled to the return of the $5,000,000 deposit. The MAYA MOA is ultimately governed by English law and contains a London Maritime Arbitration Association dispute resolution clause.

12. On March 21, 2014, Grupo R also entered into a Memorandum of Agreement (the "MARANGO MOA") with Shanara for the sale of the MARANGO, at a purchase price of $178,000,000.[5] The terms of the MARANGO MOA are in all respects identical to the MAYA MOA, aside from the purchase price.

13. In accordance with the MAYA MOA, Grupo R provided Marfield with a $5,000,000 deposit for the MAYA.

14. In accordance with the MARANGO MOA, Grupo R provided Shanara with a $5,000,000 deposit for the MARANGO.

15. After these deposits were provided (totalling $10,000,000), Marfield and Shanara were unable to subsequently obtain the release of the Vessels from their seizures by the Mexican Authorities (the First and Second Seizures), which violated the deadlines set forth in the MOAs.

---

[4] See Exhibit A, Rangel Declaration, Rangel Exhibit 3, MAYA MOA.
[5] See Exhibit A, Rangel Declaration, Rangel Exhibit 4, MARANGO MOA.

4

16. In January 2015, Grupo R cancelled the MAYA MOA and the MARANGO MOA and demanded the return of the deposits for both Vessels (totalling $10,000,000), with interest. However, Marfield and Shanara have refused to return the deposits.

17. As a result of Marfield and Shanara's failure to return the $10,000,000 security deposits to Grupo R as outlined above, on July 19, 2015 Grupo R initiated London arbitration against Marfield and Shanara in accordance with the MOA terms.[6]

II. **The Mexican Court Proceedings**

18. To obtain security regarding the eventual London arbitration award, in July 2015 Grupo R filed a lawsuit in the court of Campeche, Mexico to seize the MAYA and MARANGO. The court then ordered the seizures of the Vessels in relation to Grupo R's lawsuit (the "Third Seizure").

19. In March 2016, the Vessels were released from the First Seizure by the Prosecutor´s Office Against Organized Crime of the Mexican Attorney General in relation with the Criminal Investigation against Oceanografia.

20. In April 2017 and April 2018, respectively, the Vessels were released from the Second Seizure by the Mexican Courts in relation to the Oceanografia bankruptcy.

21. In 2017 and 2018, respectively, Marfield and Shanara sought to further release the Vessels from the Grupo R Third Seizure. In exchange for the release of the Vessels, Marfield and Shanara posted a substitute security bond with the Mexican court in the amount of USD $5,000,000 and consequently the Mexican Courts ordered the release of the MAYA in April 2017 and the release of the MARANGO in April 2018.

---

[6] Exhibit B, Declaration of English Solicitor Tom Burdass.

22.     Having posted the substitute security bond, Marfield mobilized the MAYA to the Port of Galveston, Texas in April 2017, and Shanara mobilized the MARANGO to that same port in April 2018.

23.     Upon information and belief, the Vessels remain berthed in the Port of Galveston at the Gulf Copper Shipyard as of the date of filing this lawsuit.

24.     The security bond presented by Marfield in exchange for the release of the MAYA was set to expire on April 23, 2018. Upon the expiration of that deadline, the Mexican Court ordered Marfield to post a renewed security bond with the Court. To date, Marfield has refused to comply with the Mexican Court's order, and no substitute security exists in the Mexican Court for the release of the MAYA. Regardless, on September 27, 2018, the Mexican Court issued an opinion that the MAYA is deemed to be "re-arrested," even though the MAYA has left the territorial waters of Mexico and even though no substitute security has been renewed with the Court for this Vessel.[7]

25.     The security bond presented by Shanara in exchange for the release of the MARANGO was set to expire on March 29, 2019. Upon the expiration of that deadline, the Mexican Court ordered Shanara to post a renewed security bond with the Court. To date, Shanara has refused to comply with the Mexican Court's order, and no substitute security exists in the Mexican Court for the release of the MARANGO. Regardless, on May 10, 2019, the Mexican Court issued an opinion that the MARANGO is deemed to be "re-arrested," even though the MARANGO has left the territorial waters of Mexico and even though no substitute security has been renewed with the Court for this Vessel.[8]

26.     Under these unique circumstances, the Vessels are no longer under physical arrest

---

[7] Exhibit A, Rangel Declaration, Rangel Exhibit 6, MAYA Reinstatement Order.
[8] Exhibit A, Rangel Declaration, Rangel Exhibit 7, MARANGO Reinstatement Order.

or physical seizure by Mexican authorities (as they are now outside of Mexican territorial waters and presently located in Galveston, Texas), and no substitute security remains posted for either Vessel in any Mexican Court.

### III. The London Arbitration Proceedings

27. In accordance with clause 16 of the MOAs, on July 10, 2015, Grupo R notified the Defendants of the commencement of London arbitration, and an Arbitration Tribunal was later formed. The Arbitration Tribunal fixed a hearing on the merits of the disputes for May 7-10, 2019.

28. On March 13, 2019, the Tribunal ordered the parties, on a 50/50 basis, to provide security for the Tribunal's costs and expenses in the sum of £100,000 within 28 days of the Order, *i.e.*, in the sum of £50,000 each. Grupo R paid its £50,000 share as instructed.

29. Having not received the requested security of £50,000 from the Defendants within the requisite period, on April 16, 2019 the Arbitration Tribunal issued a 7 day Notice ordering the provision of security of the full £100,000 by Apr. 23, 2019, failing which, the arbitration hearing would be vacated.

30. The Defendants still did not provide their proportion of the security. As a result, and to avoid the hearing of their claim being vacated, Grupo R posted the full £100,000 security with the Tribunal on April 23, 2019. The Defendants to date have taken no steps to put forward their 50% share of the security and release Grupo R of their undertaking to secure the full amount, which remains in place.

31. On May 30, 2019, the Arbitration Tribunal rendered its *Reasons for and Forming Part of the Final Arbitration Award*, and *Final Arbitration Award* in favor of Grupo R and against Marfield, (collectively, the "MAYA Award"), stating in relevant part:

> *(A) That Marfield shall forthwith pay to Grupo R the amount of US$5,000,000 (five million United States Dollars), being the amount of the Deposit.*

7

(B) *That interest shall be payable forthwith on the said amount of US$5,000,000 at the rate of 4.5% p.a., such interest to be compounded with quarterly rests, from 30 January 2015 until the date of payment.*

(C) *That Marfield's Counterclaim for a declaration that it is entitled to retain the Deposit fails.*

(D) *That cl. 13 of the MOA would preclude any entitlement of Marfield to damages.*

(E) *That Marfield shall bear its own legal costs and shall pay Grupo R's legal costs in the reference on the basis for which section 63(5) of the Arbitration Act 1996 provides, such costs to be assessed by us if not agreed, and we expressly reserve our jurisdiction for that purpose. Interest shall be payable thereon at the rate of 4.5% per annum with quarterly rests from the date of the date of the Award until payment.*

(F) *That Marfield shall bear the fees of the Tribunal, which we quantify in the sum of £43,297.50, and if they have first been paid by Grupo R, such sum shall be refunded immediately and in full by Marfield together with interest thereon at the rate of 4.5% per annum with quarterly rests from the date of payment until the date of reimbursement.*[9]

32.  On May 30, 2019, the Arbitration Tribunal rendered its *Reasons for and Forming Part of the Final Arbitration Award*, and *Final Arbitration Award* in favor of Grupo R and against Shanara, (collectively, the "MARANGO Award"), stating in relevant part:

(A) *That Shanara shall forthwith pay to Grupo R the amount of US$5,000,000 (five million United States Dollars), being the amount of the Deposit.*

(B) *That interest shall be payable forthwith on the said amount of US$5,000,000 at the rate of 4.5% p.a., such interest to be compounded with quarterly rests, from 30 January 2015 until the date of payment.*

(C) *That Shanara's Counterclaim for a declaration that it is entitled to retain the Deposit fails.*

---

[9] See Exhibit B, Burdass Declaration, Burdass Exhibit 1, MAYA Award, Pgs. 2-3.

8

> (D) That cl. 13 of the MOA would preclude any entitlement of Shanara to damages.
>
> (E) That Shanara shall bear its own legal costs and shall pay Grupo R's legal costs in the reference on the basis for which section 63(5) of the Arbitration Act 1996 provides, such costs to be assessed by us if not agreed, and we expressly reserve our jurisdiction for that purpose. Interest shall be payable thereon at the rate of 4.5% per annum with quarterly rests from the date of the date of the Award until payment.
>
> (F) That Shanara shall bear the fees of the Tribunal, which we quantify in the sum of £43,297.50, and if they have first been paid by Grupo R, such sum shall be refunded immediately and in full by Shanara together with interest thereon at the rate of 4.5% per annum with quarterly rests from the date of payment until the date of reimbursement.[10]

33. To date, Marfield and Shanara have refused to voluntarily pay Grupo R any of the amounts due and owing under the MAYA and MARANGO Awards.

## C. CAUSES OF ACTION

### I. First Cause of Action: Recognition of the MAYA Award in favor of Grupo R

34. Grupo R repeats and re-alleges each and every allegation contained in paragraphs 1-33 in its Original Complaint herein as if set forth in full.

35. Grupo R and Marfield entered into the MAYA MOA, wherein the parties agreed to settle all disputes via arbitration in London.

36. The state of issuance of the MAYA Award (England) is a signatory to the New York Convention, which also has been incorporated into the United States law by virtue of Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §201, *et seq.*

37. The MAYA Award will become final for all purposes thirty days after issuance, that is, on June 28, 2019, unless an appeal is filed. No reasonable grounds for appeal exist.

---

[10] See Exhibit B, Burdass Declaration, Burdass Exhibit 2, MARANGO Award, Pgs. 2-3.

15606! 0650!/120 27994v.1

38. No valid grounds for refusal or deferral of recognition of the MAYA Award specified in the New York Convention exist.

39. Grupo R seeks, pursuant to 9 U.S.C. §207, an order confirming the MAYA Award in favor of Grupo R against Marfield and a judgment from this Honorable Court that Marfield shall pay Grupo R all amounts due pursuant to the MAYA Award, plus pre-judgment and post-judgment interest at the rates established by the Arbitration Tribunal therein.

## II. Second Cause of Action: Recognition of the MARANGO Award in favor of Grupo R

40. Grupo R repeats and re-alleges each and every allegation contained in paragraphs 1-39 in its Original Complaint herein as if set forth in full.

41. Grupo R and Shanara entered into the MARANGO MOA, wherein the parties agreed to settle all disputes via arbitration in London.

42. The state of issuance of the MARANGO Award (England) is a signatory to the New York Convention, which also has been incorporated into the United States law by virtue of Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §201, *et seq.*

43. The MARANGO Award will become final for all purposes thirty days after issuance, that is, on June 28, 2019, unless an appeal is filed. No reasonable grounds for appeal exist.

44. No valid grounds for refusal or deferral of recognition of the MARANGO Award specified in the New York Convention exist.

45. Grupo R seeks, pursuant to 9 U.S.C. §207, an order confirming the MARANGO Award in favor of Grupo R against Shanara and a judgment from this Honorable Court that Shanara shall pay Grupo R all amounts due pursuant to the MARANGO Award, plus pre-judgment and post-judgment interest at the rates established by the Arbitration Tribunal therein.

### iii. Third Cause of Action: Write of Attachment of Marfield's and Shanara's Property Pursuant to TEX. CIV. PRAC. & REM. CODE § 61.001, et seq.

46. Grupo R repeats and re-alleges each and every allegation contained in paragraphs 1-45 in its Original Complaint herein as if set forth in full.

47. Attachment to secure claims that are subject to foreign-judicial proceedings and final arbitration awards is commonplace.

48. The Federal Rules of Civil Procedure allow for the seizure of property "to secure satisfaction of the potential judgment" in an action. FED. R. CIV. P. 64(a). The law of the state in which the federal court sits applies to determine what remedies are available when no federal statute applies. FED. R. CIV. P. 64(a).

49. Under Texas law, writs of attachment and garnishment are available prior to judgment. *See* TEX. CIV. PRAC. & REM. CODE § 61.001; *Marsoft, Inc. v. United LNG, L.P*, 2014 WL 5386094 (S. D. Tex. Oct. 21, 2014)(Sim Lake, J.).

50. In this case, Grupo R has demanded, and is entitled to, a money judgment in its favor against Marfield and Shanara on the basis set forth in the MAYA Award and MARANGO Award (the "Awards").

51. Upon information and belief, Marfield and Shanara have moveable property in the state of Texas and within the jurisdiction of the Southern District of Texas, i.e., the vessels MAYA and MARANGO, which are currently berthed at the Gulf Copper facility in the Port of Galveston, Texas.

52. Pursuant to FED. R. CIV. P. 64(a) and TEX. CIV. PRAC. & REM. CODE § 61.001, Grupo R seeks a Texas-state-law writ of attachment against Marfield and Shanara for the attachment of the MAYA and MARANGO to secure Marfield and Shanara's property in satisfaction

of a judgment entered in Grupo R's favor against Marfield and Shanara upon this Honorable Court's confirmation of the Awards under the Convention and 9 U.S.C. §201, *et seq.*[11]

53. Grupo R seeks immediate attachment of the MAYA and MARANGO because of the transitory capabilities of the vessels to depart the jurisdiction of this Court. Further, Defendants have previously moved the MAYA and MARANGO from the jurisdiction of Mexico where the Vessels were previously under attachment without sufficiently replenishing the security as ordered by the Mexican Court. Moreover, upon information and belief Grupo R has recently been informed that Marfield and Shanara may be intending to move the Vessels from their current location in the Port of Galveston to international waters to sell them, thus depriving Grupo R of its ability to recover its debt from the Vessels.

54. The attachment sought as to the MAYA and MARANGO is not sought for the purpose of injuring or harassing Defendants, but rather sought in furtherance of the pending London Arbitration between the parties.

55. Attachment in this matter is further warranted as both Defendants are foreign corporations which reside outside of the State of Texas. TEX. CIV. PRAC. & REM. CODE § 61.002(1). Further, Defendants have refused to repay Grupo R the debt owed. TEX. CIV. PRAC. & REM. CODE § 61.002(2). Additionally, Defendants have refused to provide security pursuant to the Order from the Courts in Mexico under the Third Seizure. TEX. CIV. PRAC. & REM. CODE § 61.002(2).[12] Finally, as noted above, upon information and belief, Defendants are or will soon be in the process of preparing to move the MAYA and MARANGO from the

---

[11] See Exhibit C, Affidavit of undersigned counsel Jeremy A. Herschaft in Support of Texas Attachment
[12] See Exhibit A, Rangel Declaration, para 23.

156061.06501/120527994v.1

Southern District of Texas to a location in international waters without leaving amounts sufficient to pay their debts. TEX. CIV. PRAC. & REM. CODE § 61.002(5).

56. The Texas Pre-judgment Attachment Statute requires a plaintiff to post a bond in an amount set by the Court as counter-security to guard against a wrongful attachment. See TEX. CIV. PRAC. & REM. CODE § 61.023 and also TRCP 592(a). In light of the two London Arbitration Awards that Grupo R has obtained against the Defendants, the prospects for a wrongful attachment are nil. Consequently, Grupo R requests that the Court only require a *de minimis* amount of security be posted.

## PRAYER

WHEREFORE, Grupo R respectfully requests the Court to enter judgment as follows:

A. That process in due form issue against Marfield and Shanara, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That pursuant to TEX. CIV. PRAC. & REM. CODE § 61.001 *et seq.*, this Court issue an Order directing the Clerk of the Court to issue Writ of Attachment pursuant to TEX. CIV. PRAC. & REM. CODE § 61.001 *et seq.* attaching all of Defendants' tangible or intangible property, specifically the vessels CABALLO MAYA and CABALLO MARANGO, and that all persons claiming any interest in the same be cited to appear and, answer the matters alleged in the Original Complaint;

C. That this Court confirm the Final London Arbitration Awards against the Defendants, and enter judgment in favor of Grupo R for the principal amount of its claims plus prejudgement interest.

E. That Grupo R be awarded all costs and attorneys' fees incurred in connection with this action, as well as post-judgment interest; and

F.  That Grupo R may have such other, further and different relief, at law or in equity, as may be just and proper.

Dated:  Houston, Texas
        May 30, 2019

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Jeremy A. Herschaft*
Jeremy A Herschaft (Attorney-In-Charge)
State Bar No. 24091970
Federal I.D. No. 2450990
Keith B. Letourneau
State Bar No. 00795893
Federal I.D. No. 20041
Jay T. Huffman
State Bar No. 24059980
Federal I.D. No. 870092
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
Email: jherschaft@blankrome.com
Email: kletourneau@blankrome.com
Email: jhuffman@blankrome.com

***ATTORNEYS FOR CORPORATIVO
GRUPO R SA de C.V.***

## VERIFICATION

STATE OF TEXAS § 
§
COUNTY OF HARRIS §

Jeremy A. Herschaft, being duly sworn, deposes and says:

1. I am a member of the bar of the State of Texas and this Honorable Court, and a partner of the firm of Blank Rome LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

_____
Jeremy A. Herschaft

Sworn to before me this
30th day of May 2019

_Laurie Babin_

LAURIE BABIN
ID #11731682
My Commission Expires
April 12, 2022