**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CORPORATIVO GRUPO R SA de C.V.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-01963 |
| | § | |
| **MARFIELD LIMITED INCORPORATED** | § | |
| **And SHANARA MARITIME** | § | |
| **INTERNATIONAL, S.A.** | § | |
| | § | |
| **Defendants.** | § | |

## MOTION TO INTERVENE

MAY IT PLEASE THE COURT:

Plaintiff-in-intervention, USS Holding, LLC's (hereinafter "USS Holding" or "Intervenor") respectfully asks the Court to permit its intervention under Rule 24 of the Federal Rules of Civil Procedure.

## I.     RELEVANT FACTS

USS Holding is the owner of the T/B SEA CREST (hereinafter "SEA CREST" or the "Barge"), a 258.6 ft U.S. flagged oceans-going tank barge that measures 2,815 gross tons and bears Official Number 648256. The M/V CABALLO MARANGO (hereinafter the "MARANGO" or the "Vessel"), a Panama flagged heavy weight construction vessel bearing IMO number 9526382, is owned by Shanara Maritime International, S.A. and/or Caterpillar Financial Services Asia Pte Ltd (hereinafter "Caterpillar") and is under the custody of Gulf Copper Shipyard pursuant to this Court's order.

On or about September 13, 2021, while the Barge was under time charter to USS Chartering LLC (hereinafter "USS Chartering"), the SEA CREST took refuge at the facilities of Gulf Copper

Pier "C" East in Galveston, Texas, in anticipation of the approaching Tropical Storm Nicholas. The Barge berthed starboard side to the pier across from the MARANGO to await the passing storm for weather conditions to improve. However, during the storm, the MARANGO broke loose from its moorings and floated free across the slip. In doing so, the MARANGO's starboard bow struck the port quarter of the SEA CREST, which subsequently caused the SEA CREST to push up against the concrete berth, and ultimately resulted in physical damage to the Barge.

USS Chartering placed the barge off-hire.  USS Holding undertook a Class damage survey and initiated the necessary repairs. As a result of the MARANGO's allision with the SEA CREST, USS Holding suffered various physical and economic damages, including an ABS class survey ($5,156.05); damage repairs performed by the Gulf Copper shipyard ($44,457.62); off-hire damages ($112,546.66); tankerman expenses ($22,991.18); tankerman hours ($17,225); and berthage at the Gulf Copper facility ($4,240).

This incident gives rise to a *custodia legis* claim, which would include the costs or expenses incurred during the period of the MARANGO's seizure, or a maritime lien claim against the MARANGO in favor of USS Holding. As such, USS Holding seeks and is entitled as a matter of right to intervene in the above-captioned litigation pursuant to Rule 24 of the Federal Rules of Civil Procedure to assert its *custodia legis* claim or alternative maritime lien rights against the MARANGO.

## II.   ARGUMENT

USS Holding has the right to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) because USS Holding claims an interest relating to the property, which is the subject of the above-referenced action, and USS Holding is so situated that the disposition of the action may as a practical matter impair or impede USS Holding's ability to protect that interest.

2

An intervention based on a maritime lien against the *res* is an intervention of right governed by Federal Rule of Civil Procedure 24(a). *See DnB Holding, Ltd. v. M/V Hermitage*, 1995 U.S. Dist. LEXIS 12977, (E.D. La. Sept. 7, 1995) (citing *Banco de Credito Indus. v. Tesoreria Gen.*, 990 F.2d 827 (5th Cir. 1993)).  Rule 24(a) provides that on timely motion, the Court must permit anyone to intervene who: (1) is given an unconditional right to intervene by federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(1)-(2).  Because the MARANGO is currently under lawful seizure and subject to the Court's approval of its judicial sale, Intervenor seeks leave to intervene in the above-captioned lawsuit and assert its *custodia legis* claim or its maritime-tort lien against the Vessel.

The Fifth Circuit has developed a four factor test for evaluating a motion to intervene under Rule 24(a)(2): (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation. *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002). It has explained "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . [and] intervention of right must be  measured by a practical rather than a technical yardstick." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991). However, failure to meet any of the four requirements results in denial of the motion. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Generally, "[f]ederal courts should

3

allow intervention where no one would be hurt and the greater justice could be attained." *Heaton*, 297 F.3d at 422.

### 1. Timeliness of Application

The Fifth Circuit has identified four factors to consider when determining whether a motion to intervene is timely: (1) "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). The Fifth Circuit has explained the timeliness requirement "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy*, 18 F.3d at 1205. "A motion to intervene's timeliness is to be determined from all the circumstances." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

In this case, USS Holding only recently learned of the damage caused by the MARANGO after it allided with the SEA CREST during Tropical Storm Nicholas on or about September 13, 2021. USS Holding immediately demanded substitute security from Caterpillar and Gulf Copper Shipyard, which both have refused to provide. As such, USS Holding now seeks leave to intervene in the above-captioned lawsuit to arrest the *res* before MARANGO is formally sold.

Existing parties to the above-referenced lawsuit will not suffer any prejudice as a result of the timing of USS Holding's requested relief.  USS Holding's claim is modest in relation to the

141527.06500/127464185v.1

claims of the parties to this action, and USS Holding will immediately make its supporting evidence available to the parties prior to the deadline for submission of the joint pre-trial order.

If not allowed to intervene, USS Holding will be denied the right to assert its *custodia legis* claim.  All *custodia legis* claims will be resolved during the upcoming scheduled trial of this matter in January 2022. Additionally, the Court is expected to issue an order approving of the sale of the MARANGO. Such order will effectively wash away maritime lien claims that otherwise exist but have not been presented to the Court before the sale becomes final. Therefore, USS Holding will be prejudiced if not allowed to intervene since the judicial sale of the MARANGO will impair USS Holding's maritime-tort lien.  Finally, there exists no unusual circumstances militating either for or against a determination that the application is timely. Therefore, this Court should determine that Intervenors' request to intervene is timely.

### 2.   Intervenor's Interest in the Subject Matter

The second factor under Rule 24(a)(2) requires that the movant "claim an interest in the subject matter of the action." *Heaton*, 297 F.3d at 422. The movant must show it has "a direct, substantial, legally protectable interest in the action, meaning that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009) (internal citations and quotation marks omitted). "[I]t is plain that something more than an economic interest is necessary." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). The Fifth Circuit has observed that "the interest test is primarily a practical guide to disposing of lawsuits by involving as many

apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207 (citation and internal quotation marks omitted).

To distribute the proceeds of a judicial sale of a vessel in an *in rem* proceeding, the Fifth Circuit observes the following relevant class rankings, ranked from highest priority to lowest: (1) expenses of justice during *custodia legis* (not regarded as a lien, but given highest priority); (2) seamen's liens for wages, (3) salvage and general average liens; (4) tort liens; (5) preferred ship mortgage liens; and (6) liens for necessaries. Here, because the MARANGO caused USS Holding to suffer damages as a result of the allision, USS Holding either possesses a *custodia legis* claim or a maritime-tort lien.  In either case, USS Holding's claim would prime the other parties' claims in the existing lawsuit to include breach of sales contract, preferred ship mortgage liens or liens for necessaries.  And if considered a cost of *custodia legis*, then the claim status is elevated above every other contract or lien claim in the above-referenced case and would be on par with the costs of *custodia legis* that are payable to the substitute custodian currently responsible for the care and safekeeping of the Vessel. These are legally protected interests that warrant granting Intervenors' request to intervene.

### 3.   Disposition of Action to Impair Intervenor's Ability to Protect Interest

The third factor for intervention under Rule 24(a)(2) requires the movant "show that disposition of the action may impair or impede the applicant's ability to protect [its] interest" in the subject matter of the litigation. *Heaton*, 297 F.3d at 422. Rule 24(a)(2) does not require "a showing by the applicant for intervention that he will be bound by the disposition of the action." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). However, "the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to

compel intervention." *Sierra Club v. Glickman*, 82 F.3d 106, 109-10 (5th Cir. 1996) (per curiam) (citing *Espy*, 18 F.3d at 1207).

In *X-Drill Holding Inc. v. Jack-up Drilling Rig SE 83,* 320 F.R.D. 444, 451 (S.D. Tex. 2017), the Court determined that disposition of the proceeds from the sale of the vessel without considering the intervenor's claims would extinguish the intervenor's maritime lien and prevent intervenor from being able to protect its interests in recovering amounts due under the respective liens. Therefore, the court determined that the intervenors asserting lien rights would be impaired or impeded if not allowed to intervene. *Id.*; *see also Point Landing, Inc. v. Ala. Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir. 1958) (unless pleadings showed as matter of law that intervenor did not have maritime lien, denial of petition to intervene deprives intervenor of right to come in and prove existence, validity, and priority of its lien); *Am. V Ships Ltd., LLC v. Norica Eng'g Servs.*, 34 Fed. Appx. 151 (5th Cir. March 19, 2002) ("Unless Appellant is permitted to intervene in the present action it will be forever prohibited from making a claim against the vessel and from recouping any of the sale proceeds currently held in the registry of the court."). Similarly, the Vessel's sale would impair Intervenor's ability to protect its lien rights against the Vessel and would nullify its *custodia legis* claim.

### 4. Intervenor's Interest Adequately Represented

Finally, under Rule 24(a)(2), the movant's "interest must not be adequately represented by existing parties to the litigation." *Heaton*, 297 F.3d at 422. "The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'" *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (quoting *Espy*, 18 F.3d at 1207). The applicant "need not show that the representation by existing parties will be, for certain, inadequate." *Id.* Rather, the burden "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Haspel &*

*Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted). However, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.*

The above-referenced lawsuit involves several competing creditors, who will not adequately protect USS Holding's interests. And it is likely that the MARANGO would be sold for an amount well below the parties' claim amounts. Therefore, because Intervenors' interest cannot be adequately represented by the existing parties to the litigation, the Court's granting of permission for USS Holding to intervene is the appropriate action.

## III.   <u>Conclusion and Prayer</u>

Intervenor USS Holding meets each of the four factors required to intervene in the above-captioned action as a matter of right pursuant to Rule 24 of the Federal Rules of Civil Procedure. By the plain language of Rule 24, "the court must permit" USS Holding to intervene.

WHEREFORE, USS Holding respectfully moves the Court to grant it leave to intervene into the matter bearing C.A. No. 4:19-cv-01963.  USS Holding also prays for all such other and further relief to which it may show itself to be justly entitled.

Dated:          Houston, Texas
                November 10, 2021          Respectfully submitted,

                                           **BLANK ROME LLP**

                                           */s/ Keith B. Letourneau*
                                           Keith B. Letourneau (Attorney-in-charge)
                                           State Bar No. 00795893
                                           Federal I.D. No. 20041
                                           Zachary J. Wyatte
                                           State Bar No. 24110556
                                           Federal I.D. No. 3350752
                                           717 Texas Avenue, Suite 1400
                                           Houston, Texas 77002
                                           Telephone: (713) 228-6601

8

Facsimile: (713) 228-6605
kletourneau@blankrome.com
zwyatte@blankrome.com

**ATTORNEYS FOR USS HOLDING LLC**

## CERTIFICATE OF CONFERENCE

I have conferred with counsel of record regarding the relief requested in this motion. Counsel for Intervenor-Plaintiffs Caterpillar Financial Services Asia Pte Ltd, Eksportfinans ASA, the Norwegian Government, represented by the Norwegian Ministry of Trade and Industry and Eksportkreditt Norge AS, and KFW IPEX-Bank GmbH, and defendants, Marfield Ltd., Inc. and Shanara Maritime International S.A. are opposed. Grupo R Corporativo is unopposed, and has waived any conflict of interest in the undersigned counsel's representation of USS Holding.

*/s/ Keith B. Letourneau*
Keith B. Letourneau

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court and served upon all known counsel of record on this 10th day of November 2021 in accordance with the Federal Rules of Civil Procedure.

*/s/ Keith B. Letourneau*
Keith B. Letourneau

141527.06500/127464185v.1